[No. H036546. Sixth Dist. June 25, 2012.]

M.F. FARMING CO., Plaintiff and Appellant, v.
COUCH DISTRIBUTING COMPANY, INC., et al., Defendants and
Respondents.

**COUNSEL**

Johnson & James, Robert K. Johnson and Omar F. James for Plaintiff and Appellant.

Fenton & Keller, Mark A. Cameron and David C. Sweigert for Defendants and Respondents.

**OPINION**

ELIA, J.—This case concerns a conflict over the use of a parcel, "Parcel B," owed by plaintiff M.F. Farming Co. (MF) but subject to an easement that plaintiff had granted to defendant Couch Distributing Company, Inc. (Couch Distributing), decades earlier along with two adjoining parcels, "Parcel A" and "Parcel C." Parcel B is an approximately 60-foot-wide strip of land, which plaintiff MF retained, over which defendant Couch Distributing was granted "a nonexclusive right of way for ingress and egress and for all utility purposes." Over the years, the distributing business of defendant Couch Distributing was built on the adjoining parcels and the easement was used as an essentially private road to service the business. More recently, plaintiff

sought to use Parcel B as a tertiary public road to access a proposed development, the Manabe-Ow development, in the City of Watsonville (City). The property dispute emerged during the development process with the City.

Plaintiff MF appeals from an order granting an anti-SLAPP motion brought by defendant Couch Distributing as to three causes of action: slander of title (second cause of action), cancellation of cloud on title (third cause of action), and injunctive relief (fourth cause of action) pursuant to Code of Civil Procedure section 425.16.[1] (§ 904.1, subd. (a)(13); see § 425.16, subd. (i).) The first cause of action to quiet title was not challenged by the motion. Defendant Couch Distributing acknowledges that a legitimate dispute remains as to the parties' respective rights with regard to Parcel B.

I

*Relevant Procedural History*

On May 18, 2010, plaintiff MF filed a complaint for quiet title, slander of title, cancellation of cloud on title, and injunctive relief.

On July 30, 2010, defendant Couch Distributing filed a special motion to strike (anti-SLAPP motion) pursuant to section 425.16 requesting that the court strike the complaint's second and third causes of action. The declaration of George W. Couch, III (George Couch or Couch), the president and chief executive officer of defendant Couch Distributing, was filed in support of the anti-SLAPP motion.

By request filed on July 30, 2010, defendant Couch Distributing requested that the court take judicial notice of certain recorded documents or maps.

On September 13, 2010, plaintiff filed a first amended complaint for quiet title, slander of title, cancellation of cloud on title, and injunctive relief.

On October 1, 2010, defendant Couch Distributing filed an amended notice of its anti-SLAPP motion to strike the second, third and fourth causes of action of the first amended complaint. The court was asked to refer to the previously filed declaration of George Couch, which was attached.

On October 14, 2010, defendant Couch Distributing filed the second amended notice of its anti-SLAPP motion.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated. SLAPP is an acronym for "strategic lawsuit against public participation." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57 [124 Cal.Rptr.2d 507, 52 P.3d 685].)

On October 27, 2010, plaintiff MF filed its opposition to the anti-SLAPP motion. In support of its opposition, plaintiff filed the initial declaration of Louis Jemison, then president of MF.

On November 2, 2010, defendant Couch Distributing filed a supplemental declaration of George Couch. It also filed hearsay objections to Jemison's declaration.

On November 9, 2010, defendant Couch Distributing filed the third amended notice of its anti-SLAPP motion.

On November 17, 2010, plaintiff MF raised certain evidentiary objections and filed supplemental declarations together with correspondence.

On December 6, 2010, plaintiff MF filed the declaration of Charles D. Eadie, a land use consultant, and a supplemental declaration of Jemison.

On December 14, 2010, the court heard the anti-SLAPP motion. By order filed January 5, 2011, the court granted defendant Couch Distributing's anti-SLAPP motion. It concluded that the second, third, and fourth causes of action of the first amended complaint arose from protected activities and plaintiff MF failed to establish a probability that it would prevail on any of those causes of action and dismissed them without leave to amend.[2]

On January 27, 2010, defendants Couch Distributing and Couch Family Partnership filed a cross-complaint for quiet title, declaratory relief, and injunctive relief.

Also on January 27, 2010, defendants Couch Distributing and Couch Family Partnership filed an answer to plaintiff's first amended complaint.

---

[2] Ordinarily, an anti-SLAPP motion is addressed to the current complaint and a plaintiff may not avoid the consequences of the motion by filing an amended complaint. (See *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.* (2004) 122 Cal.App.4th 1049, 1052, 1054–1056 [18 Cal.Rptr.3d 882] [no right to avoid an anti-SLAPP motion by filing an amended complaint pursuant to § 472 prior to the hearing on the motion]; *Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772 [131 Cal.Rptr.2d 201] [refusing leave to amend because plaintiff cannot use "eleventh-hour amendment" to plead around anti-SLAPP motion]; *Simmons v. Allstate Ins. Co.* (2001) 92 Cal.App.4th 1068, 1073–1074 [112 Cal.Rptr.2d 397] [no express or implied right in § 425.16 to be granted leave to amend complaint]; but see *Nguyen-Lam v. Cao* (2009) 171 Cal.App.4th 858, 873 [90 Cal.Rptr.3d 205] ["trial court did not err in permitting plaintiff to amend her complaint to plead actual malice in conformity with the proof presented at the hearing on the strike motion"].) In addition, the statute requires that the motion "be scheduled by the clerk of the court for a hearing not more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing." (§ 425.16, subd. (f).) Although the initial anti-SLAPP motion challenged the original complaint, no claim of error was raised in this case concerning the amendment of the complaint, the belated hearing on the motion, or the court's application of the motion to the first amended complaint.

## II

### Facts

In deciding an anti-SLAPP motion, courts must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2).)

The first amended complaint alleged the following. Plaintiff MF and defendant Couch Distributing entered into a written agreement in about November 1974 in which MF agreed to sell Parcels A and C to defendant Couch Distributing and to grant the company ingress and egress over Parcel B. These parcels were on the ocean side of and abutted Highway 1. By grant deed recorded on June 5, 1975, plaintiff MF granted two parcels, Parcel A and Parcel C, to defendant Couch Distributing and also granted it "a nonexclusive right of way for ingress and egress and for all utility purposes over Parcel B." Defendant Couch Distributing purchased Parcel A for purposes of constructing and operating its Budweiser distribution center. Defendant Couch Distributing subsequently "sold or otherwise transferred Parcels A and C" to the Couch Family Partnership, which leases the parcels to Couch Distributing.[3]

This complaint stated on information and belief that "on a parcel map dated December, 1979, as well as subsequent parcel maps submitted to the City of Watsonville by Couch [Distributing] as part of its application for building permits, Couch [Distributing] knowingly showed parcel B as a right of way rather than as a separate parcel in order to obtain permits which were otherwise not legal." At some unspecified time, defendant Couch Distributing constructed a railroad spur across Parcel B to its rear loading dock. It also created "minor encroachments on the edges of Parcel B, including trees, lights and lamp posts," which were discovered by plaintiff MF in about 1984.

The complaint further stated that plaintiff MF now desires to develop and use its property that abuts the inland side of Highway 1 and intends to use Parcel B for access. Couch Distributing contends that MF "has in some manner lost the right to use Parcel B for ingress and egress . . . ."

The slander of title cause of action alleged that, "on or about June 20, 1988 and June 1, 1998 and possibly on various dates thereafter," defendant Couch Distributing published, without privilege or justification, false maps and plot plans that cast doubt on plaintiff's title. The cancellation of cloud on title

---

[3] Defendant Couch Distributing admitted in its answer that defendant Couch Family Partnership currently owns that real property and leases it to defendant Couch Distributing.

cause of action alleged that the improperly published documents were false and fraudulently indicated that defendant Couch Distributing owned the property at issue and plaintiff MF owned only an easement. It also stated that two of the improperly published documents were published on June 20, 1988, and June 1, 1998. It further alleged that such "publication was motivated by oppression, fraud, and/or malice . . . in that defendants were using the false claim of ownership . . . as grounds for obtaining permits for the unlawful development of defendants' property and to prevent plaintiff from developing the subject property and/or causing various governmental agencies to coerce plaintiff into granting defendants rights and/or ownership of the subject property." The action for injunctive relief alleged that defendants had blocked plaintiff from the free use of its property of Parcel B as a means of ingress and egress to its property abutting Highway 1.

In his declaration in support of the anti-SLAPP motion, George Couch stated that since its purchase of the parcels, defendant Couch Distributing "has built, developed, and operated a major regional beverage distribution warehouse and related facilities and operations" on its parcels. A copy of a parcel map, recorded December 26, 1979, was attached to Couch's declaration and he stated on information and belief that this map was the December 1979 parcel map referred to in the complaint.

According to George Couch, at the time of the property purchase and "continuing for many years thereafter, both [plaintiff MF] and Couch Distributing and their respective principles [sic], understood and intended that Couch Distributing would develop Parcel B as the main entrance to its warehouse operations and [it] would have unobstructed use of Parcel B for purposes of ingress, egress, loading, turning, backing, and parking of large beverage delivery trucks, as well as for railroad access, employee parking, storage, and for any and all such similar uses related to [its] warehouse and distribution operations ('Easement Purposes')." The Couch declaration further stated that "Couch Distributing has developed and paved Parcel B as the main entrance to its warehouse operations and has had unobstructed use of Parcel B . . . . In addition, Couch Distributing has enclosed substantially all of Parcel B and the Couch Property with a security fence and gates which Couch Distributing keeps closed and locked after hours. For nearly 35 years Couch Distributing has had continuous, unrestricted use of Parcel B at all hours of the day and night . . . ."

George Couch further stated that, in about May 2008, he became aware of an administrative process pending in the City for the adoption of a specific plan to develop a light industrial/business park and residence on plaintiff MF's property and the adjacent property on the inland side of Highway 1. The proposed specific plan for the proposed development provided for "a

major public access road across Parcel B between Lee Road and the proposed development . . . on the opposite side of Highway 1 . . . ." According to Couch, this road "would have routed substantial amounts of traffic through the heart of Couch Distributing's operations," which "would have been devastating to [its] continued operations . . . ."

Couch disclosed that defendant Couch Distributing had opposed the use of Parcel B as a public access road in the City's administrative proceedings. George Couch or defendant Couch Distributing's attorney appeared at several noticed hearings to testify in opposition to the road and the attorney also wrote two letters to the City expressing the company's strong opposition to the road.

The second letter from Couch Distributing's attorney, dated April 27, 2010, informed the City that defendant Couch Distributing had used Parcel B as "an integral part of the Company's operations" and it had "broad legal rights to use Parcel B," which "serves as the main entrance to the Company's warehouse and offices for large delivery trucks, Company employees, and persons having business with the Company." The letter further stated: "Parcel B and the surrounding Company property are used for a variety of intensive uses related to the Company's warehouse and distribution operations, including employee parking, storage, and large truck turning, backing, loading, unloading, and parking. The Company developed a railroad spur over Parcel B to serve its warehouse and has enclosed Parcel B and most of the Company's property with a security fence and gates, which the Company keeps closed and locked after hours. Consistent with the Company's rights to Parcel B, the Company has had continuous, unobstructed, and virtually unfettered use of Parcel B for its operations at all hours of the day and night for the past 35 years."

The Couch declaration, together with a copy of an attached staff report prepared for the May 4, 2010 hearing of the City of Watsonville's Planning Commission, showed that City staff had recommended to the commission that the commission recommend approval of the Manabe-Ow Specific Plan to the City Council. The staff report stated: "The original concept of the plan considered a third access along an existing property owned by MF Farming across the Couch Distribution [*sic*] property. Couch Distribution [*sic*] has an easement for access to his distribution business over this property." The City had tried to resolve "significant legal issues" concerning use of that property as an access route to the proposed development but its efforts had been unsuccessful.

George Couch reported in his declaration that, following the public hearing at the May 4, 2010 planning commission meeting, the planning commission

voted to delete the proposed public access road across Parcel B from the specific plan. He asserted that the causes of action for slander of title and cancellation of cloud on title "appear to be based on statements made and letters submitted by Couch Distributing and/or its attorneys during the City's administrative process and public hearings related to the Specific Plan, a matter of public interest, and appear intended to chill Couch Distributing's rights to participate in public proceedings and open debate on important public issues."

In his declaration, George Couch claimed that he had consistently acknowledged MF's fee ownership of Parcel B. He provided a survey map, recorded in 1999 in Santa Cruz County, showing a boundary adjustment of the original Parcel A. The name "MF Farming Co." appears on Parcel B.

Couch also referred to a letter, dated July 31, 2008, from defendant Couch Distributing's attorney to MF's attorney. In that letter, it was asserted that defendant Couch Distributing had "never denied [plaintiff MF] access to the MF Parcel known as Parcel B" and never denied that "MF has a right to make certain uses of Parcel B in a manner that does not unreasonably interfere with the Company's easement rights to Parcel B, as those rights are established by the recorded easement and by the Company's historic pattern of use of Parcel B." The letter stated that, based on MF's representations, defendant Couch Distributing understood "Parcel B would be used only for an emergency access road to MF property across Highway 1 if and when the need for such emergency access arose from the development of that property." The company claimed to have relied on those representations in purchasing the property and developing its facilities. The letter indicated that a key to Couch Distributing's security gates on Parcel B was enclosed as requested.

George Couch also stated that MF had represented that it "would use Parcel B, if ever, only for emergency access to the M.F. Farming Parcels if and when [its parcels] were ever developed" and MF would not otherwise "use Parcel B in any way that would interfere with Couch Distributing's warehouse and distribution operations . . . ." He asserted that MF had "made negligible use of Parcel B and ha[d] not interfered with Couch Distributing's use of Parcel B for Easement Purposes for the past 35 years." He indicated that "Suyeo 'Soup' Manabe" had negotiated the sale of Parcels A and C on MF's behalf and repeatedly stated that Parcel B's "intended use was only for emergency access . . . ." The attorney, who had represented both parties in the transaction, was deceased.

Jemison's initial declaration indicated that he was then MF's president. In about November 1974, MF and Couch Distributing entered into a written

sales agreement with respect to Parcels A, B, and C. The agreement provided that "the Seller shall reserve fee title to a right of way strip sixty (60) feet in width," "such right of way strip to be used for ingress and egress of all kinds and for utility purposes to the remaining land of the Seller," "the Seller shall grant to the Buyer the right of way for ingress and egress of all kinds and for utility purposes over said strip west of the Highway 1 by-pass," and "[t]he deed shall include the grant of the right of way over the 60-foot strip of land to be retained by the Seller."

Jemison stated that "[i]n 1984, MF discovered that Couch [Distributing] had constructed minor encroachments on the edges of Parcel B, including trees, lights and lamp posts." In apparent response to expressed concerns with regard to Parcel B, defendant Couch Distributing's president wrote a letter to MF, dated December 10, 1984, specifying that Couch Distributing had no claims to the property by prescriptive rights or adverse possession. On or about June 29, 1985, Couch Distributing and MF executed a licensing agreement, in which MF granted Couch Distributing "a License to maintain said trees, lights and lamp posts" on the property and clarified that Couch Distributing was "not claiming any prescriptive rights whatsoever by said encroachment nor claiming any rights by adverse possession." The agreement provided that upon giving written notice terminating the license as provided, Couch Distributing would remove those encroachments at its sole expense.

Eadie's declaration, filed on behalf of plaintiff MF, stated that he was a land use consultant with the consulting firm of Hamilton Swift and Associates, which had been retained by MF in regard to the proposed Manabe-Ow development project. MF had sought to use Parcel B, which abutted Lee Road and connected to a right-of-way under Highway 1, to create an alternative access route to the proposed development. In reviewing documents related to Parcel B in the City's microfiche files in July 2009, Eadie discovered two documents that Couch Distributing had filed with the City: (1) a site plan dated June 20, 1985, and (2) a site plan dated June 1, 1998, copies of which were attached to his declaration.[4]

Eadie stated that the 1985 site plan depicts Parcel B as an existing easement on Couch Distributing's property and shows improvements constructed on Parcel B. Eadie made similar assertions with respect to the other site plan. Eadie indicated that "[i]n past discussions with representatives of

---

[4] The June 1, 1998 site plan is sometimes mistakenly referred to as the 1988 site plan but the exhibit clearly shows the date of June 1, 1998. The other site plan appears undated but Eadie states in his declaration that it was dated June 20, 1985. The complaint repeatedly refers to a publication on June 20, 1988, but this discrepancy is not explained. Defendants now raise evidentiary objections to the site plans, including the objection that they are incomplete copies. Defendants have not shown that these objections were preserved for appeal by objection below. (See Evid. Code, § 353.)

the City regarding the Ow/Manabe Specific Plan, it was [his] impression, based upon discussions with representatives of the City, that the City staff had been unclear as to the fact that MF owned Parcel B." Eadie clarified, however, that "[t]here is no aspect of the Ow/Manabe Specific Plan or the proposed Industrial Park which challenges in any manner the validity of any permit granted to Couch [Distributing]."

In a supplemental declaration, Jemison indicated that he had served as MF's president until December 1, 2010. According to Jemison, plaintiff MF retained ownership of Parcel B when it sold Parcels A and C to defendant Couch Distributing and the "sole reason MF retained Parcel B" was to use it "as access to its adjoining property at such time as MF sought to develop such property." He describes the Manabe-Ow project as a multimillion dollar project that includes development of an industrial park with approximately 1,000,000 square feet of industrial flex buildings and 25,000 square feet of commercial/retail space.

According to Jemison, during his interactions with the City concerning the development project, staff members referred to defendant Couch Distributing as the owner of Parcel B. The first time he recalled "the City referring in writing to Parcel B as a right-of-way rather than fee ownership was in 2006 in the Annexation agreement between the City and MF." The agreement required the Manabe family, the primary owners of MF, to "grant to City a public pedestrian/bicycle and emergency access easement over the current access right-of-way extending westerly to Lee Road subject to existing deed restrictions." Jemison stated that, after Eadie provided him with copies of the two site plans, he "realized for the first time the apparent source for the City's confusion regarding the ownership of Parcel B." Jemison maintained that "no aspect of the Ow/Manabe Specific Plan or the proposed Industrial Park . . . challenges the validity of any permit granted to Couch [Distributing]."

Jemison declared that "[n]ot only has Couch [Distributing] filed documents claiming ownership of Parcel B, but it has asserted that MF only has the right to use Parcel B for emergency access rather than for ingress and egress of all kinds as contractually agreed upon in the purchase agreement . . . ." According to Jemison, this contention "creates a significant impediment to MF's ability to develop its adjoining property, significantly impairs the market value of Parcel B, and creates a cloud on its title since there is no practical use for Parcel B except for providing access to MF's adjoining property."

According to Jemison, the City had "requested that MF remove Parcel B from the Manabe/Ow Specific Plan as an alternative access to its planned industrial park due to the uncertainty regarding the ownership status and

alleged restrictions on the right of use . . . ." "The [C]ity and MF agreed that . . . MF can reapply to use Parcel B as access to the Project once the ownership and access rights of MF over Parcel B have been determined in this lawsuit."

III

*Discussion*

A. *Legal Background*

■ "A cause of action against a person *arising from* any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1), italics added.) "The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76 [124 Cal.Rptr.2d 519, 52 P.3d 695].) 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820 [124 Cal.Rptr.3d 256, 250 P.3d 1115].)

■ Section 425.16 does not require a defendant to "demonstrate that the plaintiff brought the cause of action complained of with the intent of chilling the defendant's exercise of speech or petition rights." (*Equilon Enterprises v. Consumer Cause, Inc., supra,* 29 Cal.4th 53, 58.) "There simply is 'nothing in the statute requiring the court to engage in an inquiry as to the plaintiff's subjective motivations before it may determine [whether] the anti-SLAPP statute is applicable.' (*Damon v. Ocean Hills Journalism Club* [(2000)] 85 Cal.App.4th [468,] 480 [102 Cal.Rptr.2d 205].)" (*Ibid.*)

"We review an order granting or denying a motion to strike under section 425.16 de novo. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3 [46 Cal.Rptr.3d 638, 139 P.3d 30].)" (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820.)

## B. First Prong—"Arising From"

### 1. Protected Activities

■ The activities protected by the anti-SLAPP statute include "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).) "[A] defendant moving to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding need *not* separately demonstrate that the statement concerned an issue of public significance." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1123 [81 Cal.Rptr.2d 471, 969 P.2d 564], fn. omitted.)

■ "[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute. [Citation.] Moreover, that a cause of action arguably may have been 'triggered' by protected activity does not entail that it is one arising from such. [Citation.] In the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten, supra*, 29 Cal.4th 82, 89.)

### 2. Stricken Causes of Action

Although defendants' opposition to the City's approval of Parcel B as an access road to the Manabe-Ow development might have been a trigger for the lawsuit, those activities were not the basis for the challenged causes of action. The complaint's second and third causes of action concerned defendant Couch Distributing's publication of allegedly false maps and documents. In the declarations submitted in opposition to the anti-SLAPP motion, plaintiff MF focused on the two site plans.

MF recognizes that the "site plans were submitted to the City of Watsonville as part of the development of [Couch Distributing's] property." Since the site maps were apparently submitted to the City in connection with its permitting

process, an official proceeding, it appears that the "arising from" prong is satisfied as to the second and third causes of action. (See § 425.16, subd. (e)(2).) In *Midland Pacific Building Corp. v. King* (2007) 157 Cal.App.4th 264 [68 Cal.Rptr.3d 499], a "cause of action for breach of contract" was predicated on the "submission of the High Density Tract Map to the planning commission and city council" (*id.* at p. 272). Since the cause of action "arose directly out of statements made and plans submitted to the planning commission and city council," the defendants had satisfied the first prong of the anti-SLAPP statute. (*Id.* at p. 274.)

◼ MF nevertheless argues that publication of each of these site plans was not a protected activity because each "falsely claim[ed]" that defendant Couch Distributing "owns Parcel B rather than merely having an easement therein." "It is MF's position that fraudulently claiming ownership of another[] person[']s property is not within the free speech rights intended by the legislature to be protected by the SLAPP legislation." MF contends that "[t]he gravamen of this property dispute is based upon Couch [Distributing]'s filing of allegedly fraudulent documents, not any right of free speech." Case after case makes clear that the validity of the speech or petitioning activity is ordinarily not a consideration in analyzing the "arising from" prong.

In *Hansen v. Department of Corrections & Rehabilitation* (2008) 171 Cal.App.4th 1537 [90 Cal.Rptr.3d 381], the plaintiff was the object of an employee investigation by the Department of Corrections and Rehabilitation (CDCR). (*Id.* at p. 1541.) "Based on CDCR's act of continuing the investigation after his retirement, [the plaintiff] filed a complaint alleging that CDCR took retaliatory action against him as a whistleblower in violation of Labor Code section 1102.5." (*Ibid.*) He alleged that other CDCR employees had created a " 'web of lies.' " (*Ibid.*) The appellate court concluded, among other things, that "the objected-to statements and writings, i.e., the allegedly false reports of criminal activity, were made in connection with an issue under consideration by an authorized official proceeding and thus constitute[d] protected activity under section 425.16, subdivision (e)(2)." (*Id.* at p. 1544.)

In *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562 [92 Cal.Rptr.2d 755], a class action lawsuit alleged that the defendant drug manufacturer had made false statements before regulatory bodies, the medical profession, and to the public in connection with the drug Coumadin. (*Id.* at p. 564.) "The first amended complaint allege[d] defendant's statements were false and misleading" and did not "fall within the protections of the First Amendment's right to freedom of speech." (*Id.* at p. 566.) The reviewing court responded: "[I]n making this argument, plaintiffs are placing the cart before the horse. The allegation in the unverified complaint that the statements were false may or may not be true. Whether or not they were true

should be considered in the second part of the analysis; whether there is a probability plaintiffs will prevail." (*Ibid.*)

█ In *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294 [106 Cal.Rptr.2d 906], the plaintiff company sued its former in-house counsel for disclosing confidential and privileged information to the attorneys handling her wrongful termination case. (*Id.* at p. 298.) The plaintiff argued that its lawsuit did not fall within the anti-SLAPP statute because the defendant had "no First Amendment right to disclose privileged and confidential documents or to refuse to return those documents to Fox, their rightful owner." (*Id.* at p. 305.) The appellate court rejected this contention, stating: "The same argument could be made by the plaintiff in a defamation suit—the defendant has no First Amendment right to engage in libel or slander. Yet, defamation suits are a prime target of SLAPP motions. [Fn. omitted.] [¶] The problem with Fox's argument is that it confuses the threshold question of whether the SLAPP statute applies with the question whether Fox has established a probability of success on the merits. [Fn. omitted.] The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the inquiry as to whether the plaintiff has established a probability of success would be superfluous." (*Ibid.*)

In *Navellier v. Sletten, supra,* 29 Cal.4th 82, the plaintiffs argued that "the anti-SLAPP statute does not apply to this action because any petitioning activity on which it is based was not 'valid.' " (*Id.* at p. 94.) The Supreme Court clarified that "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' (*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356, 1367 [102 Cal.Rptr.2d 864].) Plaintiffs' argument 'confuses the threshold question of whether the SLAPP statute [potentially] applies with the question whether [an opposing plaintiff] has established a probability of success on the merits.' (*Fox Searchlight Pictures, Inc. v. Paladino*[, *supra,*] 89 Cal.App.4th 294, 305 . . . .)" (*Ibid.*)

This is not a case where the defendant conceded, or the evidence conclusively established, that the assertedly protected speech or petition activity was "illegal as a matter of law" and, therefore, the defendant was "precluded from using the anti-SLAPP statute to strike the plaintiff's action" under *Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 [46 Cal.Rptr.3d 606, 139 P.3d 2]. (See *Flatley v. Mauro, supra,* 39 Cal.4th at p. 330 [attorney's conduct constituted criminal extortion as a matter of law]; see also *Mendoza v. ADP Screening &*

*Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654 [107 Cal.Rptr.3d 294] [*Flatley's* term " 'illegal' was intended to mean criminal, and not merely violative of a statute"].)

The fourth cause of action for injunctive relief appears to be predicated on both protected activity and unprotected activity. It incorporated the previous allegations and alleged that "[d]efendants have blocked plaintiff from the free use of its property and threaten to continue and block such use in the future." It further alleged that "[d]efendants' wrongful conduct, unless and until enjoined and restrained by order of this court will cause great and irreparable injury to plaintiff, in that plaintiff is restricted in the use of his property . . . ." The prayer for relief requests a permanent injunction "enjoining defendants . . . from interfering with plaintiff's use of Parcel B, including but not limited to plaintiff's use of Parcel B as access to the industrial property."

■ To the extent that the injunctive relief cause of action arises from defendant Couch Distributing's protected speech and petitioning activities, it satisfies the first prong. But insofar as the cause of action arises from overuse of the easement or the alleged encroachments and other physical interference with MF's property rights with respect to Parcel B, it does not arise from protected activities. Since the protected activity is not merely incidental, the first prong is satisfied and the burden shifts to plaintiff MF to show a probability of success on the merits. (See, e.g., *Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551, fn. 7 [110 Cal.Rptr.3d 129] ["where the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis"]; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287 [74 Cal.Rptr.3d 873] [a mixed cause of action is subject to an anti-SLAPP motion if "at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity"]; *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 [15 Cal.Rptr.3d 215] ["where a cause of action alleges both protected and unprotected activity, the cause of action will be subject to section 425.16 unless the protected conduct is 'merely incidental' to the unprotected conduct . . ."].)

## C. *Second Prong—Probability of Success*

### 1. *Basic Principles*

■ "In order to establish a probability of prevailing on the claim (§ 425.16, subd. (b)(1)), . . . the plaintiff 'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff

is credited.' [Citations.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821 [123 Cal.Rptr.2d 19, 50 P.3d 733].) " 'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based." (§ 425.16, subd. (b)(2).) However, we neither "weigh credibility [nor] compare the weight of the evidence. Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." ' (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 269, fn. 3.) If the plaintiff 'can show a probability of prevailing on *any part of its claim,* the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' (*Mann v. Quality Old Time Service, Inc.*[, *supra,*] 120 Cal.App.4th 90, 106 . . . , original italics.)" (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820.)

### 2. *Slander of Title—Second Cause of Action*

■ MF did not show any probability of prevailing on the merits on the slander of title cause of action. "The elements of a cause of action for slander of title are '(1) a publication, (2) which is *without privilege* or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.' [Citations.]"[5] (*Alpha and Omega Development, LP v. Whillock Contracting, Inc.* (2011) 200 Cal.App.4th 656, 664 [132 Cal.Rptr.3d 781].) "A rival claimant of property is conditionally privileged to disparage or justified in disparaging another's property in land by an honest and good faith assertion of an inconsistent legally protected interest in himself. (See *Thompson v. White,* 70 Cal. 135 [11 P. 564]; Rest. Torts, § 647.)" (*Gudger v. Manton* (1943) 21 Cal.2d 537, 545 [134 P.2d 217]; see Civ. Code, § 47 [privileged publications]; see also Civ. Code, § 48 ["In the case provided for in subdivision (c) of Section 47, malice is not inferred from the communication."].)

■ "Slander of title is effected by one who without privilege publishes untrue and disparaging statements with respect to the property of another under such circumstance[s] as would lead a reasonable person to foresee that a prospective purchaser or lessee thereof might abandon his intentions. (Rest.,

---

[5] Publication does not require recordation. (See *Seeley v. Seymour* (1987) 190 Cal.App.3d 844, 858 [237 Cal.Rptr. 282]; *Kalajian v. Nash* (1957) 148 Cal.App.2d 495, 497 [306 P.2d 921] [letter written to prospective buyer claiming timber rights already purchased]; *Phillips v. Glazer* (1949) 94 Cal.App.2d 673, 674 [211 P.2d 37] [defendant posted sign stating that anyone buying the plaintiff's adjoining property was " 'buying law suit' " and " 'rt. sides wall, foundation mine' "]; see also Rest.2d Torts, § 630 ["Publication of an injurious falsehood is its communication intentionally or by a negligent act to someone other than the person whose interest is affected."].) Slander of title may be committed by both spoken and written means. (*Coley v. Hecker* (1928) 206 Cal. 22, 27 [272 P. 1045].)

Torts, § 624.) It is an invasion of the interest in the vendibility of property. In order to commit the tort actual malice or ill will is unnecessary. (*Gudger* v. *Manton*, 21 Cal.2d 537, 543 [134 P.2d 217]; Rest., Torts, §§ 624, 625, 628.) Damages usually consist of loss of a prospective purchaser. (Rest., Torts, § 633.) To be disparaging a statement need not be a complete denial of title in others, but may be any unfounded claim of an interest in the property which throws doubt upon its ownership. (*Gudger* v. *Manton, supra.*)" (*Phillips v. Glazer, supra,* 94 Cal.App.2d 673, 677.) "However, it is not necessary to show that a particular pending deal was hampered or prevented, since recovery may be had for the depreciation in the market value of the property (*Davis* v. *Wood,* 61 Cal.App.2d 788 [143 P.2d 740])." (*Hill v. Allan* (1968) 259 Cal.App.2d 470, 489 [66 Cal.Rptr. 676].)

The Supreme Court has recognized: "If the matter is reasonably understood to cast doubt upon the existence or extent of another's interest in land, it is disparaging to the latter's title where it is so understood by the recipient. (Rest. Torts, § 629.)" (*Gudger v. Manton, supra,* 21 Cal.2d at pp. 542–543, disapproved on another point in *Albertson v. Raboff* (1956) 46 Cal.2d 375, 381 [295 P.2d 405].) It does not appear that MF can establish that defendant Couch Distributing published documents that falsely represented that it owned Parcel B or falsely claimed some legal interest in it since there is no dispute that the company owned an easement over Parcel B.

Plaintiff never disputed that the parcel map that was recorded on December 26, 1979, was the December 1979 parcel map referred to in the complaint. That parcel map reflected a subdivision of Parcel A (previously granted to defendant Couch Distributing) into two smaller parcels. Parcel B is labeled as such and is also marked as a 60-foot right-of-way. The parcel map did not concern ownership of, or rights with respect to, Parcel B.

The two later site plans submitted by defendant Couch Distributing to the City show the parcel's boundaries but do not label it as Parcel B or specify its owner. The June 20, 1985 site plan labels the area as an "existing easement" and the 1998 site plan leaves it unlabeled. But the site plans concerned building additions (an office addition and a warehouse addition) on defendant Couch Distributing's land, not on Parcel B.[6]

Even if any of the published documents could be reasonably understood by a third party as casting doubt on MF's title to Parcel B, MF did not present any evidence of proximately caused pecuniary loss, an essential element of the cause of action. (See *Burkett v. Griffith* (1891) 90 Cal. 532, 537 [27 P. 527], disapproved on different point in *Gudger v. Manton, supra,* 21 Cal.2d at

---

[6] MF does not challenge Couch Distributing's permits.

pp. 543–544, which was disapproved on a different point in *Albertson v. Raboff, supra,* 46 Cal.2d at p. 381.) Plaintiff MF did not present any expert evidence that recordation of the parcel map or submission of the site plans to the City had actually impaired the marketability or value of Parcel B.

■ MF nevertheless argues that the essential element of pecuniary loss is satisfied because he is entitled to recover the expense of legal proceedings necessary to remove a cloud on title, citing *Wright v. Rogers* (1959) 172 Cal.App.2d 349 [342 P.2d 447], and asserts that the damages issue is for the trier of fact. *Wright* was a case of fraud, forgery, and disparagement of title by the recording of a grant deed and deeds of trust. (*Id.* at p. 365.) The appellate court observed that the expense of legal proceedings necessary to remove a cloud on title may be recovered in a disparagement of title action. (*Id.* at p. 366.) But not every false publication regarding property creates a cloud on title and no "California decision require[s] that the published matter create a legal 'cloud' upon plaintiff's title to constitute a disparagement." (*Seeley v. Seymour, supra,* 190 Cal.App.3d 844, 858.) As further explained below, MF did not demonstrate a probability of prevailing on the merits of the third cause of action for cancellation of cloud on title. Thus, MF has not provided sufficient evidence of pecuniary loss.

3. *Cancellation of Cloud on Title—Third Cause of Action*

■ Suits to remove a cloud on title by judicial cancellation of an instrument or adjudication that the instrument is invalid are preserved by Civil Code section 3412. (*Castro v. Barry* (1889) 79 Cal. 443, 445–446 [21 P. 946].) That section provides: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled." (Civ. Code, § 3412, enacted 1872.) ■ A facially void instrument is not subject to cancellation. (Civ. Code, § 3413; see *Castro v. Barry, supra,* 79 Cal. at p. 445.)

■ "A suit to quiet title must be distinguished from an action to remove a cloud on the title alleged to have been created by a designated instrument. In a suit to remove a cloud the complaint must state facts, not mere conclusions, showing the apparent validity of the instrument designated, and point out the reason for asserting that it is actually invalid. [Citations.]" (*Ephraim v. Metropolitan Trust Co.* (1946) 28 Cal.2d 824, 833–834 [172 P.2d 501]; see *Castro v. Barry, supra,* 79 Cal. at pp. 444–446 [distinguishing a quiet title action from an action to remove a cloud]; cf. § 760.010 et seq. [quiet title action].)

As a threshold matter, it is not clear that there is any "instrument." (See *Hoag v. Howard* (1880) 55 Cal. 564, 565 ["If we look into the provisions of the [Civil] Code in which the word 'instrument' is used, it will be invariably found to indicate some written paper or instrument signed and delivered by one person to another, transferring the title to or creating a lien on property, or giving a right to a debt or duty."]; see also Gov. Code, § 27279, subd. (a) [defining "instrument" to mean "a written paper signed by a person or persons transferring the title to, or giving a lien on real property, or giving a right to a debt or duty" with respect to county recordation].) Neither the 1979 parcel map nor the site plans transfer title to or any interest in Parcel B, create a lien on Parcel B, or evidence any kind of right, obligation, or debt with respect to Parcel B.

In any case, MF has not presented any evidence that the recorded December 1979 parcel map concerning subdivision of Couch Distributing's property or either of the two unrecorded site plans concerning building additions on Couch Distributing's property was legally void or voidable and, if not cancelled, threatens plaintiff's title in Parcel B. Plaintiff has not met its burden of showing a probability of prevailing on the cause of action to "cancel the cloud on title."

## 4. *Injunctive Relief—Fourth Cause of Action*

Defendant Couch Distributing argues that to prevail on the cause of action for injunctive relief, plaintiff MF "must show a likelihood of prevailing on the merits of the second and third causes of action for slander of title and cancellation of cloud on title on which [its] claim for injunctive relief is based." The language of the fourth cause of action is not so restrictive. ·

It alleged that "[d]efendants have blocked plaintiff from the free use of its property . . . ." It averred that plaintiff MF "has no adequate remedy at law for the injuries being suffered in that it will be impossible for plaintiff to determine the precise amount of damage that it will suffer if defendants' conduct is not restrained and plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for its injuries." (See Civ. Code, § 3422; Code Civ. Proc., § 526.)

Defendant Couch Distributing evidently is asserting that plaintiff MF, the servient tenement owner, is entitled to use Parcel B for only emergency access to its property across Highway 1, a limitation not contained in the grant deed.[7] In addition, it appears that Parcel B has been fenced and gated

---

[7] "Where the easement is founded upon a grant, . . . only those interests expressed in the grant and those necessarily incident thereto pass from the owner of the fee. The general rule is clearly established that, despite the granting of an easement, the owner of the servient tenement

by defendant Couch Distributing. Jemison's declaration stated that plaintiff MF brought the action "to quiet title to Parcel B and obtain a court determination regarding the validity of Couch [Distributing]'s claim that Parcel B can only be used for emergency access . . . ."

 An injunction may be a proper remedy in connection with a quiet title action (see *Brewer v. King* (1956) 139 Cal.App.2d 33, 40 [293 P.2d 126]; *Taylor v. Hawley* (1935) 6 Cal.App.2d 576, 580 [45 P.2d 226]; *Wolf v. Gall* (1916) 174 Cal. 140, 145 [162 P. 115]), the first cause of action. An injunction is also a proper remedy for misuse or excessive use of an easement. (See *Crimmins v. Gould* (1957) 149 Cal.App.2d 383, 391 [308 P.2d 786]; *Winslow v. City of Vallejo* (1906) 148 Cal. 723, 727–728 [84 P. 191].) " 'A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden.' [Citation.]" (*Wall v. Rudolph* (1961) 198 Cal.App.2d 684, 686 [18 Cal.Rptr. 123].)

 "The plaintiff need only establish that his or her claim has 'minimal merit' (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89) to avoid being stricken as a SLAPP. (*Jarrow Formulas, Inc. v. LaMarche* [(2003)] 31 Cal.4th [728,] 738 [3 Cal.Rptr.3d 636, 74 P.3d 737] ['the anti-SLAPP statute requires only "a minimum level of legal sufficiency and triability" [citation]'], quoting *Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 438, fn. 5 [97 Cal.Rptr.2d 179, 2 P.3d 27].)" (*Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 291.) MF has made a sufficient showing to withstand the anti-SLAPP motion with respect to the fourth cause of action. (*Oasis West Realty, LLC v. Goldman, supra,* 51 Cal.4th at p. 820; *Soukup v. Law Offices of Herbert Hafif, supra,* 39 Cal.4th at p. 269, fn. 3.)

## DISPOSITION

We reverse the order granting the special motion to strike the first amended complaint's second, third and fourth causes of action under Code of Civil Procedure section 425.16. Upon remand, the court is directed to enter an order granting the motion as to only the cause of action for slander of title

---

may make any use of the land that does not interfere unreasonably with the easement. [Citations.] It is not necessary for him to make any reservation to protect his interests in the land, for what he does not convey, he still retains. [Citation.] Furthermore, since he retains the right to use the land reasonably himself, he retains also the power to transfer these rights to third persons. [Citations.]" (*Pasadena v. California-Michigan etc. Co.* (1941) 17 Cal.2d 576, 579 [110 P.2d 983].)

and the cause of action for cancellation of cloud on title and denying the motion as to the fourth cause of action for injunctive relief. The parties shall each bear their own costs on appeal.

Rushing, P. J., and Premo, J., concurred.