Filed 11/4/15  Juntz v. Wells Fargo Bank CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| VERNON JUNTZ et al.,<br><br>      Plaintiffs and Appellants,<br><br>v.<br><br>WELLS FARGO BANK N.A., as Trustee, etc., et al.,<br><br>      Defendants and Respondents. | A140207<br><br>(Mendocino County<br>Super. Ct. No. SCTMCVG 1361897) |

Plaintiffs Vernon Juntz and Jeannette Figueiredo, after defaulting on their mortgage loan, brought this action to preemptively stop the foreclosure sale, alleging irregularities in the handling of their loan and in the foreclosure process.  We agree with the trial court that plaintiffs have not stated, and cannot state, any claim for relief.  We therefore affirm the trial court's judgment of dismissal following defendants' demurrers.

**BACKGROUND**

Countrywide Home Loans Inc. (Countrywide), acting under that name and one of its fictitious names, America's Wholesale Lender (Wholesale), made a $1,299,000 mortgage loan to plaintiffs secured by plaintiffs' Mendocino County home.

The November 2006 deed of trust names as beneficiary Mortgage Electronic Registration Systems, Inc. (MERS), which is to act solely as the nominee of the lender and its successors.  The loan was purportedly transferred into the Harborview Mortgage

1

Loan Trust 2006-12 (Harborview Trust), the trustee of which is Wells Fargo Bank, N.A. (Wells Fargo).

Approximately five years later, in April 2011, plaintiffs apparently stopped making loan payments. A year and a half after that, in December 2012, National Default Servicing Corporation, acting for Select Portfolio Servicing (Portfolio), recorded a notice of default.

To stave off foreclosure, plaintiffs sued Wholesale, Wells Fargo, Harborview Trust, Countrywide, Portfolio, and MERS. Plaintiffs asserted Countrywide's loan terms were vague, inconspicuous, and illegal, and that Countrywide shirked its duty to fully check on plaintiffs' finances and thereby learn plaintiffs would be unable to shoulder the debt. Plaintiffs also asserted defects in the "securitization" process that purportedly transferred their loan to the other defendants.

Plaintiffs asserted numerous causes of action: (1) lack of standing to foreclose; (2) fraud in the concealment; (3) fraud in the inducement; (4) intentional infliction of emotional distress; (5) slander of title; (6) quiet title; (7) breach of contract; (8) declaratory relief; (9) violation of the federal Truth in Lending Act (TILA);[1] (10) violation of the federal Real Estate Settlement Procedures Act (RESPA);[2] (11) rescission; (12) violation of California Foreclosure Reduction Act[3]; and (13) violation of Consumer financial protection bureau regulations.

Defendants demurred. The trial court sustained the demurrers as to all causes of action without leave to amend and entered a judgment of dismissal. Plaintiffs timely appealed, challenging the trial court's ruling on all causes of action except the seventh, for breach of contract.

---

[1] Title 15 United States Code section 1601 et seq. and title 12 Code of Federal Regulations part 226 (2015).

[2] Title 12 United States Code section 2601 et seq.

[3] Code of Civil Procedure section 2924.18.

## DISCUSSION

### Standard of Review

"We review de novo the trial court's order sustaining a demurrer." (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1468 (*Cansino*).) Our only task is to determine whether plaintiffs' complaint states a cause of action. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.) We accept as true all well-pleaded allegations, and we will reverse the trial court's order of dismissal if the factual allegations state a cause of action on any available legal theory. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 (*Evans*); *Cansino*, at p. 825.) We treat respondents' demurrer as admitting all properly pleaded material facts, but not contentions, deductions, or conclusions of fact or law. (*Evans*, at p. 6.) We also consider matters that may be judicially noticed, and a " ' "complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." ' " (*Ibid.*)

Where, as here, "the trial court sustains a demurrer without leave to amend, we review the determination that no amendment could cure the defect in the complaint for an abuse of discretion. [Citation.] The trial court abuses its discretion if there is a reasonable possibility that the plaintiff could cure the defect by amendment. [Citation.] The plaintiff has the burden of proving that amendment would cure the legal defect, and may meet this burden on appeal. [Citations.]" (*Cansino*, *supra*, 224 Cal.App.4th at p. 1468.)

We evaluate each of plaintiffs' causes of action, except the seventh, which plaintiffs no longer pursue. We conclude plaintiffs have not stated, and cannot state, any claim for relief.

### First and Eighth Causes of Action: Declaratory Relief to Stop Foreclosure

Plaintiffs seek a declaratory judgment prohibiting foreclosure because of alleged irregularities in the foreclosure process. Plaintiffs alleged there is no documentary evidence showing their note and deed of trust were properly transferred to the

3

Harborview Trust, and so, plaintiffs claim, none of defendants has rights in the note or deed of trust, and none has the right to foreclose.

It is now well established that a defaulting borrower has no right, on a mere hope or hunch, to preemptively test in court whether an entity conducting a nonjudicial foreclosure in fact has authority to foreclose. (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1154 (*Gomes*) ["Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated."]; *Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 513 (*Jenkins* ) [allowing a "preemptive" action "would result in the impermissible interjection of the courts into a nonjudicial scheme enacted by the California Legislature"].)

When loan and default are evident, hypothetical disputes between those transferring or securitizing the loan do not create an actual controversy between the defaulting borrower and the foreclosing entity. Thus, a borrower cannot halt the nonjudicial foreclosure process with boilerplate allegations and condemnatory rhetoric about the evils of the banks' creation of securitized loan investment vehicles and thereby put the burden on the foreclosing entity to establish in court its right to proceed with a nonjudicial foreclosure. (*Jenkins*, *supra*, 216 Cal.App.4th at pp. 512, 515.) A "preemptive" cause of action " 'would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures.' " (*Id.* at p. 513, quoting *Gomes*, *supra*, 192 Cal.App.4th at p. 1155.) Indeed, here, plaintiffs have remained in their home since mid-2011—over four years—without making any loan payments.

Some courts have hinted a borrower may pursue preemptive declaratory relief *if* the borrower can "identif[y] a specific factual basis for alleging that the foreclosure was not initiated by the correct party." (*Gomes*, *supra*, 192 Cal.App.4th at pp. 1155–1156 [distinguishing three federal trial court cases and finding instant suit speculative], italics

4

omitted; but see *Jenkins*, *supra*, 216 Cal.App.4th at pp. 512–513 [indicating preemptive wrongful foreclosure cases are categorically banned and, thus, suggesting doubt as to whether there is any viable "*Gomes* exception"].) In this case, however, plaintiffs have neither made nor proposed allegations identifying a specific factual basis for believing the foreclosure was initiated by the wrong party. All plaintiffs have proffered is a generic assertion of missing recorded documentation. Yet, it is established under California law that a debt secured by a deed of trust can be assigned without recordation of any document (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 272 (*Fontenot*)) and that recordation is not required for the assignment of a beneficial interest in a deed of trust to be effective (*Haynes v. EMC Mortgage Corp.* (2012) 205 Cal.App.4th 329, 332–336).

### *Second Cause of Action: Fraud in Concealment*

Plaintiffs allege defendants concealed that the mortgage loan would be securitized. But paragraph 20 of the deed of trust, of which the trial court took judicial notice, actually informed plaintiffs that the "Note or a partial interest in the Note (together with this Security Instrument) [could] be sold one or more times without prior notice . . . ." (See *Scott v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 743, 751–752 [contradicted allegations in pleading may be disregarded].)

Also, plaintiffs did not allege, or suggest how they could allege, any plausible harm from being unaware of possible future plans to securitize the loan. It is undisputed plaintiffs owe payments on the loan to whoever owns the loan. (See *Fontenot*, *supra*, 198 Cal.App.4th at p. 272 ["As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note."].) Further, the omission of a warning of possible securitization is not a misstatement of current fact, but at best an omission of a prediction of future fact. Opinions about the future are not actionable fraud. (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 606.) Finally, plaintiffs do not allege any defendant owed them a duty to explain the possible

5

securitization.  Plaintiffs claim they could so allege if given the chance, but do not explain why any such duty should exist under California law.

***Third Cause of Action:  Fraud in the Inducement***

In plaintiffs' fraudulent inducement cause of action, they allege defendants misrepresented their authority to foreclose and their status as owners of the note. Detrimental reliance, however, is an element of a fraud claim (*Small v. Fritz Companies, Inc.* (2003) 30 Cal.4th 167, 173), and plaintiffs have not alleged it with the particularly required (*Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 234 [" ' "Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." ' "].)  The reliance alleged in the complaint—that plaintiffs chose to *enter* the loan—is nonsensical, as the alleged misrepresentations concern *post*-loan activities.  Nor have plaintiffs offered any alternative allegations of detrimental reliance sufficiently specific to survive a demurrer.

***Fourth Cause of Action:  Intentional Infliction of Emotional Distress***

Plaintiffs allege defendants intentionally inflicted emotional harm by attempting to wrongfully foreclose on their home.  As discussed in connection with other causes of action, plaintiffs have not, and cannot, allege any predicate cause of action for wrongful foreclosure.  Nor have they alleged any specific conduct during the ongoing "loan agreement" dispute "that could be considered 'outrageous.' "  (*Wilson v. Hynek (*2012) 207 Cal.App.4th 999, 1009.)  For instance, "[t]here are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated [her]."  (*Ibid.*)  Moreover, a corporation's pursuit of economic advantage does not generally subject it to intentional infliction claims.  (See *Trerice v. Blue Cross of California (*1989) 209 Cal.App.3d 878, 885.)  Given that no further allegations have been

6

proffered on appeal, the intentional infliction claim was also properly dismissed with prejudice.

***Fifth Cause of Action:  Slander of Title***

Plaintiffs base their slander of title cause of action on publication of the notices that must precede a foreclosure under Civil Code section 2924.   Civil Code section 2924, however, provides that the "mailing, publication, and delivery of notices as required by this section" "constitute privileged communications pursuant to Section 47."  (Civ. Code, § 2924, subd. (d).)

Most recently, Civil Code section 2924, subdivision (d), has been held to extend only the qualified privilege of section 47, subdivision (c) applicable to "a communication, without malice, to a person interested therein," not the absolute litigation privilege of subdivision (b), which would apply regardless of malice.  (*Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 335–341 (*Kachlon*); but see *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1517 [nonjudicial foreclosure activity constituted privileged communications under the litigation privilege].)

Assuming plaintiffs had to allege malice, their effort was inadequate.  "For this purpose, malice is defined as actual malice, meaning ' "that the publication was motivated by hatred or ill will towards the plaintiff or . . . that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' "  (*Kachlon*, *supra*, 168 Cal.App.4th at p. 336, italics omitted.)  All plaintiffs alleged was "malice" and, in a blanket fashion with no specific facts, that defendants had pre-publication knowledge of falsity.  Such conclusory allegations are not sufficient to bring a nonjudicial foreclosure to a halt.

Even if we were to assume plaintiffs' generic "malice" allegations were sufficient, plaintiffs also failed to allege any "proximately caused pecuniary loss, an essential element of the cause of action" (*M.F. Farming, Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 199), nor did they allege reliance by a third party to

7

plaintiffs' detriment (see *Smith v. Commonwealth Land Title Ins. Co.* (1986) 177 Cal.App.3d 625, 630).  The reliance and harm plaintiffs allege and stick to in their appellate briefing—reliance by credit agencies and harm to their credit scores—arise from their default on the loan, which is undisputed and also unrelated to any claimed falsity.  (See *Jenkins*, *supra*, 216 Cal.App.4th at p. 532.)  Any falsity about who owns the loan would have no impact whatsoever on plaintiffs' delinquency or credit ratings.

***Sixth Cause of Action:  Quiet Title***

"Quieting title is the relief granted once a court determines that title belongs in plaintiff. . . .  In other words, in such a case, the plaintiff must show he has a substantive right to relief before he can be granted any relief at all." (*Leeper v. Beltrami* (1959) 53 Cal.2d 195, 216.)  Plaintiffs' quiet title claim is therefore dependent on their other claims.  Since these fail, the quiet title claim also necessarily fails.

Additionally, a borrower may not "quiet title against a secured lender without first paying the outstanding debt on which the mortgage or deed of trust is based." (*Lueras v. BAC Home Loans Servicing, LP* (2013) 221 Cal.App.4th 49, 86 (*Lueras*).)  "Allowing plaintiffs to recoup the property without full tender would give them an inequitable windfall, allowing them to evade their lawful debt." (*Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 526; see also *Gavina v. Smith* (1944) 25 Cal.2d 501, 506 ["One who violates his contract cannot have recourse to equity to support that very violation."].)  Plaintiffs have not alleged they have tendered or paid the debt, and have not asserted they could so allege, so the quiet title action fails for that reason, as well.  Plaintiffs' citation to a TILA case, *Botelho v. U.S. Bank, N.A.* (N.D. Cal. 2010) 692 F.Supp.2d 1174, 1181, is inapposite.  Tender is not an "extra" or extraneous element of a quiet title claim.  (*Ibid.*)

Finally, a quiet title claim must generally be verified (Code Civ. Proc., § 761.020), something plaintiffs have not done or offered to do.

***Ninth through Eleventh Causes of Action:  TILA, RESPA, Rescission***

All agree the TILA, RESPA, and rescission causes of action, premised on nondisclosures near the time of selling the loan, are time-barred unless plaintiffs can invoke equitable tolling.  (See 15 U.S.C. §§ 1640(e), 1635(f); 12 U.S.C. § 2614; Code Civ. Proc., § 337.)

"Equitable tolling 'halts the running of the limitations period so long as the plaintiff uses reasonable care and diligence in attempting to learn the facts that would disclose the defendant's fraud or other misconduct.'  [Citation.]" (*Sagehorn v. Engle* (2006) 141 Cal.App.4th 452, 460; see also *Cervantes v. Countrywide Home Loans, Inc.* (9th Cir. 2011) 656 F.3d 1034, 1045 [equitable tolling applies " 'in situations where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim' "].)  " 'To establish that equitable tolling applies, a plaintiff must prove the following elements:  fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of its cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts.  [Citations.]' [Citation.]" (*Sagehorn v. Engle*, *supra*, 141 Cal.App.4th at pp. 460–461.)

As to tolling, plaintiffs offer only the conclusory allegation that defendants failed "to effectively provide the required disclosures."  This is wholly inadequate, not even coming close to identifying defendants' fraud or plaintiffs' diligence.  (See *Hubbard v. Fidelity Federal Bank* (9th Cir. 1996) 91 F.3d 75, 79 [declining to toll TILA statute of limitations when "nothing prevented [the mortgagor] from comparing the loan contract, [the lender's] initial disclosures, and TILA's statutory and regulatory requirements"].)

As to the RESPA claim, in particular, plaintiffs have failed to allege sufficient damages as a result of defendants failing to properly provide any information.  Plaintiffs claim harm to their credit, but it was the loan default, not any RESPA violation, that

9

harmed their credit.  (See *Jenkins*, *supra*, 216 Cal.App.4th at pp. 532–533 [affirming dismissal of RESPA claim on this ground].)

Finally, as to the purported rescission claim, "[r]escission is *not* a cause of action; it is a remedy" (*Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 70), imposed, for example, to avoid a contract procured by fraud (*Filet Menu, Inc. v. C.C.L. & G., Inc.* (2000) 79 Cal.App.4th 852, 861–862) or when a party has materially breached a contract (*Crofoot Lumber, Inc. v. Thompson* (1958) 163 Cal.App.2d 324, 334–335).  (See Civ. Code, § 1689.)  Because rescission is not a cause of action, and because plaintiffs have not stated causes of action for fraud or breach of contract, plaintiffs demand for a rescission remedy is also unavailing.

***Twelfth Cause of Action:  Foreclosure Reduction Act***

The Foreclosure Reduction Act, also known as the Homeowners' Bill of Rights (HBOR), became effective on January 1, 2013 (Sen. Bill No. 900 (2011–2012 Reg. Sess.); Assem. Bill No. 278 (2011–2012 Reg. Sess.); Cal. Const., art. IV, § 8, subd. (c)(1); see *Lueras*, *supra*, 221 Cal.App.4th at p. 86, fn. 14), after the default under plaintiffs' deed of trust was recorded in December 2012.  "[U]nless there is an 'express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . . must have intended a retroactive application' [citation]."  (*Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841, italics omitted.)  The HBOR does not state that it has retroactive effect (*Rockridge Trust v. Wells Fargo, N.A.* (N.D. Cal. 2013) 985 F.Supp.2d 1110, 1152), and plaintiff s have not identified any extrinsic sources indicating the Legislature intended that it have one.

Plaintiffs, on appeal, argue they seek prospective application of the law.  They assert they "still have rights under the HBOR should [any defendant] attempt to move forward with the foreclosure while their application for a loan modification is pending."

Plaintiffs are not claiming a current violation, but hypothesizing a future one that is not proper for adjudication at this time.  (*People v. Slayton* (2001) 26 Cal.4th 1076, 1084.)

***Thirteenth Cause of Action:  Federal Regulations***

The federal regulation cited, title 12 Code of Federal Regulations part 1024 et seq., simply fleshes out the requirements to be imposed under RESPA.  Plaintiffs purported cause of action for violation of these regulations is nothing more than a recast RESPA claim, and we reject it for the reasons we rejected that claim.

**DISPOSITION**

The judgment is affirmed.  Respondents to recover costs on appeal.

11

_____
Banke, J.

We concur:


_____
Humes, P. J.


_____
Margulies, J.


A140207, *Juntz v. Wells Fargo Bank N.A.*