Filed 9/16/14  Monterra Homeowners Assn. v. McCullough CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MONTERRA HOMEOWNERS ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THOMAS McCULLOUGH, et al.<br><br>    Defendants and Appellants. | D065485<br><br><br>(Super. Ct. No. INC088577) |


APPEAL from orders of the Superior Court of Riverside County, Randall D. White, Judge.  Affirmed as to Thomas McCullough, and dismissed as to Marla McCullough.

Douglas S. Fabian; Law Office of James J. Moneer and James J. Moneer; Ferris & Britton and Michael R. Weinstein, for Defendants and Appellants.

Peters & Freedman, David M. Peters and Kyle E. Lakin, for Plaintiff and Respondent.

This appeal arises from a dispute between the Monterra Homeowners Association (Association) and one of its homeowners, Thomas McCullough, regarding McCullough's right to use a narrow strip of land (known as Lot E) owned by the Association and located outside the development's perimeter wall. After the Association learned that McCullough had recorded a document claiming an easement interest in Lot E, the Association brought an action against McCullough seeking to cancel the instrument and clarify the parties' rights.

McCullough then recorded an amended easement document limiting his prior recorded interest in Lot E. The Association responded by filing an amended complaint and seeking a preliminary injunction preventing McCullough from recording any additional documents regarding Lot E. Shortly after, McCullough filed an anti-SLAPP motion seeking to dismiss the entire amended complaint. (Code Civ. Proc., § 425.16 (§ 425.16).)

After considering the parties' submissions and conducting a hearing, the court: (1) granted a preliminary injunction ordering McCullough not to record any additional documents pertaining to Lot E until final judgment; and (2) denied McCullough's anti-SLAPP motion, concluding the statute does not govern any of the four causes of action alleged in the amended complaint (quiet title, declaratory relief, cancellation of written instrument, and breach of covenant).

On appeal, McCullough challenges the preliminary injunction ruling and contends the court erred in the anti-SLAPP ruling on two causes of action (cancellation of written instrument and breach of covenant). We conclude the court did not abuse its discretion in

2

granting preliminary injunctive relief. We also determine: (1) the court properly found the anti-SLAPP statute inapplicable to the Association's breach of covenant claim; and (2) the cancellation of written instrument claim comes within anti-SLAPP protection, but the Association met its burden to show a probability of prevailing on this cause of action. Accordingly, we affirm both orders.[1]

FACTUAL AND PROCEDURAL BACKGROUND

Because the Association prevailed on its preliminary injunction motion and was the party opposing the anti-SLAPP motion, we summarize the facts in the light most favorable to the Association. We discuss McCullough's conflicting evidence to the extent it is relevant to an issue raised on appeal.

The Association is the homeowners association for a 95-lot residential development in Palm Desert. The Association is managed by a Board of Directors (Board) and governed by a declaration of covenants, conditions, and restrictions (CC&R's). McCullough and his wife are members of the Association, and have owned a home in the development since 1989.

McCullough's home and about six other homes are located on a street along the northern perimeter of the development. A northern perimeter fence runs along the backyards of these homes. North of this perimeter fence is Lot E, a narrow strip of undeveloped land. In early 1991, it was discovered that a very thin portion of Lot E

---

[1] The Association also sued McCullough's wife, who also appealed. Because Mrs. McCullough was not a party to the two challenged claims or to the preliminary injunction order, she has no standing to appeal. We thus dismiss her appeal.

(about one and one-half feet) fell inside the perimeter fence, within each of these homeowners' back yards. To resolve that issue, in March 1991, the prior owner of Lot E granted these owners an exclusive easement to the land within the perimeter fence.

Several months later, in June 1991, the prior owner of Lot E conveyed all of Lot E to the Association. That conveyance was reflected in a recorded grant deed. The CC&R's were thereafter restated and included Lot E within the definition of the Association's common area.[2]

About two years later, McCullough and other adjacent neighbors asked the Board for permission to plant on the exterior side of the perimeter fence (on Lot E) to provide additional privacy for their yards. On July 6, 1993, the Board granted this request. The Board minutes state: "The homeowners are to be responsible in perpetuity for maintenance and any planting must be subject to the Architectural Committee approval. The Architectural Committee approval is contingent upon the filing of recorded documents regarding the maintenance at the homeowners expense."

Shortly after, McCullough asked the Board for permission to plant oleander bushes on the exterior side of the perimeter wall on Lot E. After discussion, the Board approved the plantings on the condition that the Association would not be responsible for any of the plants if they die or fail to thrive.

---

[2] The parties dispute whether the Association formally annexed Lot E, and if not, whether it is nonetheless subject to the CC&R's common area rules based on the conduct of the parties. We do not resolve this issue in this appeal.

About one month later, on August 26, 1993, the Association's property manager wrote a letter to McCullough (August 1993 letter). The word "EASEMENT" appears at the top of the letter. The body of the letter stated: "Per specifications submitted and Board discussion relating to architect committee member concerns (in file), approval is granted for planting along the north perimeter wall subject to the following conditions: [¶] A.) Homeowner holds harmless the [A]ssociation regarding any work done at homeowners direction on common areas. [¶] B.) Association has the final decision affecting the plantings if detrimental to common areas (e.g. plants grown too tall). [¶] All previous stated agreements are also in effect."

Shortly after, McCullough planted oleanders on the portion of Lot E that abutted the back of his property (on the exterior side of the perimeter fence). He also installed an irrigation system. McCullough thereafter maintained and watered these plantings. The Association paid for the water and for property taxes applicable to Lot E.

In July 2005, the Association received complaints regarding the "deplorable" condition of the "unkempt" landscaping in Lot E, including "dead scrubs, [and] overgrown Oleander protruding onto the street."

Several months later, in October 2005, McCullough filed and recorded a document entitled "ACCEPTANCE OF EASEMENT." The document states:

> "WHEREAS on July 6, 1993, the [Association], by and through its [Board], unanimously granted an easement to homeowners whose real properties abut the north perimeter wall to plant on that certain real property legally described as: [¶] [Lot E]
>
> "WHEREAS on August 26, 1993, [the Association's property manager] entered into a written easement for planting directly with

5

the Grantee herein, Thomas McCullough, a homeowner whose real property abuts the north perimeter wall, with respect to [Lot E].

"[T]he Grantee Thomas McCullough hereby acknowledges and accepts the easement this 24th day of October 2005, retroactive to the date the subject easement was issued by the Grantor, August 26, 1993."

The document was signed only by McCullough. Neither the Association nor the Board had notice of the existence of this document or was aware of the recording.

In early 2007, the Association's landscaper (at the direction of the Board's landscaping committee) substantially trimmed McCullough's oleanders, without notice to McCullough. Shortly after, McCullough's attorney wrote a letter to the Board complaining about the tree trimming, and informing the Board for the first time that McCullough had recorded his easement on Lot E. He warned the Association "not to damage my client's property again," and stated that his client "is tired of the incessant threats to trim his landscaping." At about the same time, McCullough placed a small low wire fence around the oleanders and two " 'No Trespassing' signs" in the Lot E area outside the perimeter fence. He wrote to the Association that if it removed his "property . . . [,] arrest is certain."

In July 2007, McCullough received a letter from the Association's property manager stating the code enforcement officer for the City of Palm Desert (City) requested his " 'No Trespassing' " signs be removed. In response, McCullough contacted the City planning office, and said he has an easement in Lot E and therefore should be permitted to place these signs in this area. A City official told him to submit a written application for approval to post his signs. Several weeks later, McCullough applied to the City for

6

permission to maintain the no-trespassing signs to protect his easement. The next month, the City approved the signs. However, the Board then removed the signs, asserting they violate the CC&R's.

Two months later, on November 30, 2007, the Board met regarding McCullough's claimed easement. According to the draft minutes, the Board voted to place the following statement in the minutes regarding McCullough's alleged easement in Lot E:

> "Mr. McCullough . . . claims he has an easement, in perpetuity, on a piece of land outside the north wall of the community. The property in question is approximately 6' 5" wide and runs the length of the wall parallel to Loma Vista Lane. This piece of property is owned by the [Association] and is described as a tax lot "E[.]"

> "Mr. McCullough bases his belief that he has an easement . . . because the [Board] granted him an easement at their board meeting held July 6, 1993. This would seem to be the end of the discussion except the board acted inappropriately and without the proper authority. No Monterra [Board] has the authority to grant easements, for the private benefit of any one individual homeowner, on property owned jointly by all of the homeowners[.]

> "Further to this matter, the Association pays the property taxes on this land, pay[s] for the water used to irrigate this area, and pay[s] for the maintenance of the landscaping.

> "This matter came to the Boards attention when Mr. McCullough accused the Association of trimming the oleanders . . . . Because this land belongs to the Association, the Association and/or it's landscapers have every right to trim as needed. Even if Mr. McCullough erroneously believed he had an easement, the Association could trim as they deemed necessary. We base this opinion on [the August 1993 letter] to Mr. McCullough . . . from [the property manager, stating:] . . . 'Association has the final decision affecting the plantings if detrimental to common areas (e.g. plants grown too tall).'

> "The Board now considers the matter closed and will no longer spend Association funds to deal with this easement allegation pursued by Mr. McCullough. . . ."

7

Two years later, in August 2009, the Association filed a superior court complaint against McCullough, alleging four causes of action: (1) quiet title; (2) declaratory relief; (3) cancellation of written instrument; and (4) breach of covenant. In asserting these claims, the Association acknowledged that McCullough has a "non-exclusive license" over Lot E to plant landscaping for privacy purposes, but alleged this interest remains subject to the Association's rights to manage and control this property. The Association also alleged McCullough engaged in wrongful conduct by "threaten[ing]" the Association's landscaper with a lawsuit for trimming the oleander trees and claiming the tree trimming was a " 'criminal act.' " The Association alleged it was required to agree to indemnify its landscaper to avoid the landscaper terminating his landscaping services "out of fear of a lawsuit."

McCullough filed a cross-complaint, and the parties conducted discovery and brought various pretrial motions, including the Association's summary judgment motion, which was denied. While this litigation was ongoing, in September 2010, the City contacted the Association asking it to effectuate plant trimming on Lot E that the City described as " 'overgrown.' "

In June 2011, McCullough recorded another document, entitled "AMENDED ACCEPTANCE OF EASEMENT." The document was similar to McCullough's prior recorded document except for a final paragraph, which limited the scope of the easement to only the portion of Lot E that "is contiguous to McCullough's property."

Five months later, in November 2011, the Association filed an amended complaint, asserting the same four causes of action and the same factual allegations, but

8

adding allegations directed at the new recorded document and adding factual details underlying the claims. In the quiet title and declaratory relief causes of action, the Association sought judicial declaration of its rights in Lot E, alleging that McCullough wrongfully claimed a "permanent, unfettered 'exclusive' easement" over the property and McCullough at most, has a "non-exclusive and conditional easement" over a small portion of Lot E. The third cause of action (cancellation of written instrument) sought to invalidate the "void" easement documents and requested damages for McCullough's actions in threatening to sue the landscaper and in filing a lawsuit against the Association. The fourth cause of action (breach of covenant) alleged various breaches of the CC&R's, including the placement of the no-trespassing signs on Lot E.

Shortly after, the Association moved for a preliminary injunction requesting the court to order McCullough to refrain from recording any document against Lot E until final judgment in the action. The parties' arguments in favor and opposed to this motion will be discussed in the Discussion section below.

Two weeks later, McCullough moved to strike the entire amended complaint under the anti-SLAPP statute. McCullough argued the statute governed for two reasons. First, he argued that his action in recording the two easement documents was "**done in connection with matters under consideration by**" the Association, which is a "*form of local government*," and therefore the Association's challenges to the recording arose from constitutionally-protected petitioning activities. Second, McCullough argued that his posting of the no-trespassing signs constituted protected petitioning activity because the issue of whether the signs were permitted under city codes was under consideration by

9

two City departments. On the probability-of-prevailing issue, McCullough argued the claims were without merit, relying primarily on the November 30 draft minutes and on admissions by various Board members that an easement was granted to McCullough in 1993.

The Association countered that the anti-SLAPP statute was inapplicable because McCullough's actions in recording the easement documents were "private, business type transactions," and the mere fact that a homeowners association was involved did not trigger anti-SLAPP protection absent a showing the claims arose from protected conduct. The Association also presented evidence to show its claims had merit. Of particular relevance here, the Association submitted the declaration of Wayne Hancock, who served on the Board from about July 1991 through 1993, when McCullough's easement was purportedly created. Based on his personal knowledge, Hancock declared:

> "I understood that the permission given to Mr. McCullough did not include the sole or exclusive discretion to use and maintain the planting area and that the Board would have never approved anything that granted sole or exclusive discretion for a homeowner to use and maintain property that was Common Area or was owned by the Association; I further understood that the Board did not intend to grant any easement with respect to the land in question and I do not recall the Board ever granting any homeowner an easement during my tenure on the Board; it is my further understanding that any planting was to be subject to the approval of the Association's Architectural Committee and that such approval was contingent upon the filing of recorded documents at Mr. McCullough's expense, but not at his sole discretion."

After considering the parties' submissions and holding a hearing, the court concluded the anti-SLAPP statute was inapplicable because the "[t]he thrust of the complaint" concerned only the propriety of the recorded easement, which did not involve

10

protected activity. The court also rejected McCullough's claim that his posting the no-trespassing signs constituted protected activity.

The court also granted the Association's preliminary injunction motion, and ordered McCullough to refrain from recording any additional documents regarding Lot E until the conclusion of the lawsuit.

McCullough appeals both rulings.

DISCUSSION

I. *Anti-SLAPP Motion*

A. *Generally Applicable Principles*

Section 425.16 (the anti-SLAPP statute) permits a court to strike a cause of action "arising from" an act "in furtherance of" specified constitutional rights unless the court determines the plaintiff establishes a probability of prevailing on the claim. (§ 425.16, subd. (b)(1).) The Legislature has mandated that courts construe this statute "broadly" in favor of the moving party. (§ 425.16, subd. (a).)

The analysis of an anti-SLAPP motion involves two steps.

First, the defendant has the burden to show the defendant's allegedly wrongful conduct was "*in furtherance of*" its free speech or petition rights and that the cause of action *arose* from this protected conduct. (§ 425.16, subd. (b)(1), italics added.) The anti-SLAPP statute identifies four categories of actions that are " '*in furtherance of*' " a defendant's free speech or petition rights. (§ 425.16, subd. (e), italics added.) The first two categories concern statements made before a governmental or other official body, or statements made in connection with a matter under consideration or review by these

11

entities. (§ 425.16, subd. (e)(1), (2).) The latter two categories concern statements or conduct made in connection with an issue of public interest. (§ 425.16, subd. (e)(3), (4).) In determining whether a claim *arose* from the asserted protected activity, a court must disregard the labeling of the claim and focus on the "defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92 (*Navellier*).)

If the defendant meets its burden to show the claim arose from protected activity, the burden shifts to the plaintiff to show a probability of prevailing. The plaintiff must " ' "demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820 (*Oasis West*).) The plaintiff's burden is not high. "We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700.) A plaintiff "need only establish that his or her claim has 'minimal merit.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291.)

We review the court's ruling de novo. (*Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 645.) We are not bound by the court's findings and conduct an independent review of the entire record. (*Ibid*.) "If the trial court's decision is correct on any theory applicable to the case, we affirm the order regardless of the correctness of the

12

grounds on which the lower court reached its conclusion." (*Robles v. Chalilpoyil* (2010) 181 Cal.App.4th 566, 573.)

### B. *Analysis*

On appeal, McCullough challenges the court's denial of his anti-SLAPP motion only on two causes of action: (1) the third cause of action for cancellation of a written instrument; and (2) the fourth cause of action for breach of the CC&R's. He argues these claims arose from protected activity because each includes and/or incorporates factual allegations challenging the propriety of his engaging in constitutionally-protected activities. We analyze these arguments separately with respect to each cause of action.

### 1. *Third Cause of Action: Cancellation of Written Instrument*

### a. *Summary of Allegations*

In the cancellation of written instrument cause of action, the Association challenged the validity of the two easement documents recorded by McCullough. The Association alleged the documents misrepresented that McCullough has an "**unfettered**" easement or property interest in Lot E, and claimed that neither the Association nor the Board conveyed, or had the authority to convey, an unlimited property interest. The Association alleged that if these documents "are left outstanding, there will remain a cloud on the title . . . leaving significant uncertainty as to [the] Association's and its members' legal rights, duties, and obligations with respect to the Association's property and resulting in serious and significant injury to Association and its members." (Capitalization omitted.)

13

The Association *additionally* sought damages for other alleged acts by McCullough related to the claimed easement, including McCullough's threatening the landscaper with legal action, filing a lawsuit against the Association, and threatening to file a criminal report against the Association and its landscaper. In this regard, Paragraphs 56 and 57 read:

> "56.   [McCullough] has refused to acknowledge that . . . he does not hold an unconditional\unfettered easement or property interest over the Association's property.  [McCullough] has further otherwise made it clear through his communications to [the] Association and its agents and representatives, such as by his posting 'no trespassing' signs on the Association's property, *threatening to file a lawsuit against the Association's landscaper*, *filing a lawsuit against the Association*, his continued failure to cancel the 'Acceptance of Easement', and his unilateral recording of the 'Amended Acceptance of Easement' during the pendency of the instant lawsuit, that he refuses to cancel the purported 'Acceptance of Easement' and 'Amended Acceptance of Easement' and intends to enforce them against [the] Association.  [McCullough's] actions have clouded title and continue to cloud title to the subject property and create a litany of problems for the Association and its members with respect to the management, maintenance and control of the subject property.

> "57.   *As a direct and proximate result of the foregoing described conduct*, *actions and/or omissions of [McCullough], [the] Association has suffered damages in a precise amount unknown*, but believed to be in excess of this Court's minimum jurisdictional limits.  [The] Association is presently unaware of the precise amount of said damages, but will establish the same at the time of trial according to proof."   (Italics added, capitalization omitted.)

### b. *Arising from Protected Conduct*

We agree with the trial court that the allegations based on McCullough's recording the easement documents do not trigger anti-SLAPP protection.  Although McCullough filed the documents with a governmental entity (the county recorder's office), this filing did not occur in connection with a matter "under consideration" by this office.  (§ 425.16,

14

subd. (e)(2).)  Recording documents in a county recorder's office is a private business event to ensure that prospective purchasers and mortgagees are on notice of the recording party's interests/claims burdening a property title.  (See *Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1251; *Taormina Theosophical Community, Inc. v. Silver* (1983) 140 Cal.App.3d 964, 971.)  The Legislature did not intend to apply the anti-SLAPP statute to a business transaction that is performed solely to benefit the personal interest of the individual.  (See *Garretson v. Post* (2007) 156 Cal.App.4th 1508, 1524; see also *Blackburn v. Brady* (2004) 116 Cal.App.4th 670, 676-677; *Kajima Engineering & Construction, Inc. v. City of Los Angeles* (2002) 95 Cal.App.4th 921, 929-932 (*Kajima*).)

Likewise, the Association's allegations do not show the easement recording involved a matter of public interest as that phrase has been judicially defined under the anti-SLAPP statute.  (§ 425.16, subd. (e)(3), (4).)  In this regard, McCullough's reliance on *Chaker v. Mateo* (2012) 209 Cal.App.4th 1138 is unhelpful.  In *Chaker*, this court found a series of derogatory statements on the Internet about the plaintiff and his business were a matter of public interest because they served to warn consumers about the quality of a business.  (*Id.* at pp. 1143-1147.)  Recording a document to provide notice of a party's personal interest in private property is not equivalent to a consumer warning for the public's protection.

However, our determination that the challenges to McCullough's easement recordings is not governed by the anti-SLAPP statute does not end the analysis.  As set forth above, the third cause of action was *also* expressly based on McCullough's

15

activities: (1) threatening the landscaper with a lawsuit; (2) expressing an intent to report potential criminal activity to the police; and (3) filing a lawsuit. McCullough argues that *these* allegations triggered anti-SLAPP protection. We agree.[3]

If a cause of action is based on several distinct factual circumstances, a defendant meets its burden to show a claim is subject to the anti-SLAPP statute if one of these factual circumstances supports the application of the statute, *unless* the protected conduct is " ' "merely incidental" ' " to other alleged unprotected conduct. (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551 (*Haight Ashbury*); accord *M.F. Farming Co. v. Couch Distributing Co., Inc.* (2012) 207 Cal.App.4th 180, 197 (*M.F. Farming*); *Mann v. Quality Old Time Service, Inc.* (2004) 120 Cal.App.4th 90, 103 (*Mann*).) Under this principle, if there are multiple factual grounds underlying a cause of action, the court must examine whether the claim is at least partially independently based on protected activity that is not incidental. (*M.F. Farming, supra*, 207 Cal.App.4th at p. 197; *Haight Ashbury, supra*, 184 Cal.App.4th at pp. 1550-1553; *Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1287; *Mann, supra*, 120 Cal.App.4th at p. 103.) "[W]here the defendant shows that the gravamen of a cause of action is based on nonincidental protected activity as well as nonprotected activity, it has satisfied the first prong of the SLAPP analysis." (*Haight Ashbury, supra*, at p. 1551, fn. 7.)

---

3       Although McCullough did not raise this issue below, it is one of law and we exercise our discretion to reach it.

Under these principles, the third cause of action, *as alleged*, is based on protected activity that independently supports the cause of action. In addition to alleging that the recording of the easement document was improper and created a cloud on the title, the Association alleged McCullough threatened to file a lawsuit against the Association's landscaper and filed a lawsuit against the Association. The Association alleged: "As a direct and proximate result" of *this* conduct, the "Association has suffered damages . . . ." (Capitalization omitted.) Threats in anticipation of litigation are generally considered protected conduct under the anti-SLAPP statute. (*Feldman v. 1100 Park Lane Associates* (2008) 160 Cal.App.4th 1467, 1481; *Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 36.) Likewise, filing a lawsuit is an exercise of a party's constitutional right of petition. (*Soukup v. Law Offices of Herbert Hafif, supra*, 39 Cal.4th at p. 291.)

The Association argues these allegations cannot trigger anti-SLAPP protection because they were merely *evidence* to support its claim for cancellation of written instrument. However, in its pleading, the Association expressly sought compensatory and punitive damages *based on* McCullough's actions that included his filing a lawsuit and threatening to file a lawsuit. These are independent predicate allegations underlying the plaintiff's third cause of action. "The anti-SLAPP statute's definitional focus is [on] the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning." (*Navellier, supra*, 29 Cal.4th at p. 92.) Under this principle, McCullough met his burden to show the cause of action was governed by the anti-SLAPP statute.

17

c. *Probability of Prevailing*

Because McCullough met his burden to show the cancellation of written instrument cause of action was governed by the anti-SLAPP statute, the burden shifted to the Association to show a probability of prevailing on its claim. Although the trial court did not reach this step, it is appropriate for us to resolve the issue because our review is de novo and a remand would waste judicial resources and further delay the resolution of this long-running dispute.

The cancellation of written instrument cause of action is an equitable claim that is codified in Civil Code section 3412. (*M.F. Farming, supra*, 207 Cal.App.4th at p. 200.) Civil Code section 3412 reads: "A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

The Association presented evidence that the Acceptance of Easement and Amended Acceptance of Easement documents purport to transfer an exclusive or unlimited easement to McCullough, but they are void because the Board conveyed only a license to plant on a small portion of Lot E and/or a limited nonexclusive easement subject to the Association's rights to maintain or control the plantings. The Association also presented evidence that cancellation was necessary because the documents were clouding its title and McCullough was acting on the representations contained in the recorded documents to the Association's detriment. This evidence was sufficient to

18

support the court exercising its equitable powers to cancel the instruments. (See *M.F. Farming, supra*, 207 Cal.App.4th at p. 200.)

Although McCullough presented contrary evidence showing the recorded documents accurately reflected the property interest conveyed to him by the Association, this evidence did not establish as a matter of law that the cancellation of written instrument was without merit. For example, McCullough repeatedly cites the draft minutes of a December 2007 Board meeting to argue that the Acceptance of Easement and Amended Acceptance of Easement were valid as a matter of law. In those draft minutes, the Board indicated it believed it *had* granted an easement to McCullough, but suggested it now believed it had no authority to do so. This statement, however, must be read in context of the other portions of the minutes, in which the Board stated it always understood that this purported "easement" was limited in scope and that the Board retained the right to manage and control all activities on Lot E, including the landscaping. This conclusion is further evidenced by the fact that the Association had paid the property taxes and water bills for Lot E, and the declaration of former Board member Hancock, who denied that McCullough was given a "sole or exclusive discretion to use and maintain the planting area."

McCullough argues that even if the Association met its burden to show a probability of prevailing on its claim to cancel the recorded easement documents, the Association cannot show it will prevail on its factual allegations seeking damages based on McCullough's protected conduct (e.g., threatening lawsuits, bringing a lawsuit). We need not reach this issue because a plaintiff meets its burden to show a probability of

19

prevailing on a cause of action if *any* part of a claim has merit. (*Mann, supra*, 120 Cal.App.4th at pp. 105-106.) "If the plaintiff 'can show a probability of prevailing on *any part of its claim*, the cause of action is not meritless' and will not be stricken; 'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands.' " (*Oasis West, supra*, 51 Cal.4th at p. 820, quoting *Mann, supra*, 120 Cal.App.4th at p. 106; *Burrill v. Nair* (2013) 217 Cal.App.4th 357, 379-382.)

McCullough cites authority holding that a SLAPP motion may be granted if a portion of a cause of action has no merit. (See *City of Colton v. Singletary* (2012) 206 Cal.App.4th 751, 772-775.) However, as McCullough acknowledges, *Colton* is inconsistent with this court's *Mann* holding. Our holding in *Mann* has been cited by the California Supreme Court (*Oasis West, supra*, 51 Cal.4th at p. 820) and followed by other Courts of Appeal (see *Burrill v. Nair, supra*, 217 Cal.App.4th at pp. 379-382; *Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1211-1212). We continue to find that *Mann* describes the proper mixed-cause-of-action analysis required by the plain language of the anti-SLAPP statute.

We also reject McCullough's argument raised for the first time in his reply brief that the Association will not prevail because it cannot show a "**reasonable apprehension of serious injury if the instrument remains outstanding**." The argument is waived because it was not raised below or in his opening brief. In any event, the allegations regarding the cloud on the title and McCullough's actions taken in reliance on the

20

easement documents are sufficient to show the necessary equitable grounds supporting the need to cancel the allegedly void documents.

We are likewise unpersuaded by McCullough's extended discussion of the circumstances under which the Association ordered trees to be trimmed. The Association is seeking to cancel an instrument that is allegedly a misstatement or misrepresentation of McCullough's actual interest in Lot E. The issue whether the Association had the authority to cut down the plantings at a particular time under the terms of the parties' prior agreement is not material to this issue.

The court properly denied McCullough's anti-SLAPP motion on the Association's third cause of action.

### 2. *Fourth Cause of Action: Breach of Covenant*

#### a. *Summary of Allegations*

In the fourth cause of action, the Association alleged the CC&R's constitute equitable servitudes that are binding on all property owners including McCullough, and the CC&R's define the common area to include Lot E. The Association further alleged McCullough breached numerous specific CC&R's provisions by: (1) recording documents against the Association's property; (2) interfering with the Association's "management, operation and control" of its property; (3) asserting an "unfettered easement\property interest over the" property; and (4) placing " 'no trespassing' " signs on the Association's property without prior approval. The Association sought damages and injunctive relief requiring McCullough to remove the no-trespassing signs and cancel the recorded documents.

21

b. *The Allegations Do Not Arise from Protected Speech or Conduct*

The fourth cause of action is based, in part, on the Association's allegations that McCullough violated the CC&R's by posting the no-trespassing signs in the Lot E area. McCullough contends this activity triggered anti-SLAPP protection under section 425.16, subdivisions (e)(1) and (e)(2) because the issue whether he was permitted to post the signs was a matter under consideration by the City.

For a brief period (July through September 2007), the City was involved in determining whether McCullough's no-trespassing signs violated City sign ordinances. However, the Association's breach of covenant claim did not arise from, and was not based on, the City's ordinances, or on McCullough's statements in connection with the City's consideration of this issue. Although McCullough's communications with the City regarding the signs may have been one trigger for the lawsuit, those communications were not the *basis* for the *fourth cause of action* as it was pled in the amended complaint. Thus, these allegations do not come within the anti-SLAPP statute.

The fact that the alleged wrongful conduct "may have been 'triggered' by protected activity," does not mean the cause of action arose from that activity for purposes of the anti-SLAPP statute. (*Navellier, supra*, 29 Cal.4th at p. 89; see also *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 76-77.) The "arising from" statutory phrase means the moving party's act underlying the nonmoving party's cause of action "must *itself* have been an act in furtherance of the right of petition or free speech." (*Cotati, supra*, at p. 78.) "[T]he critical consideration is whether the cause of action is *based on* the [moving party's] protected free speech or petitioning activity." (*Navellier, supra*, at p. 89.) "The

22

principal thrust of the claim, in terms of any 'allegedly wrongful and injury-causing conduct . . . that provides the foundation for the claim,' will determine the applicability of the anti-SLAPP statutory scheme." (*Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 55.)

We also reject McCullough's suggestion that his posting the no-trespassing signs was petitioning activity because the Association "effectively classifie[d]" them as " 'threats' of litigation/filing of a report with the police." This argument is not supported by a fair reading of the complaint. In the fourth cause of action, the Association claims the no-trespassing signs violated specific provisions of the CC&R's and did not assert the signs constituted "litigation threats."

McCullough alternatively argues that the fourth cause of action is based on the same litigation threats as alleged in the third cause of action (i.e., litigation threats made to the landscaper). In support, McCullough relies on the Association's reference in the fourth cause of action to McCullough's "*interference with the Association's management, operation and control of the Association's property . . . .*" (Italics added, capitalization omitted.) McCullough argues that "[t]he only actions . . . that could conceivably qualify as '*interference with the [Association's] management, operation and control*' " of the property are "the filing of the lawsuit against the Association, McCullough's threat of litigation against the Association's landscaper, and the promise to report any damage to his oleanders to the police." (Italics added.)

The argument is without merit because it is not based on a reasonable reading of the amended complaint. Although we are required to broadly construe the anti-SLAPP

23

statute, we must examine the pleadings and related evidentiary record in a fair and commonsense manner to determine whether the particular claim is based on protected activities. The allegations of the fourth cause of action are narrowly directed to the claim that McCullough breached specific provisions of the CC&R's. Reasonably read, the complaint does not include an allegation that McCullough breached the CC&R's by threatening litigation against the landscaper or by filing a lawsuit. Although the Association incorporated "by reference" the other allegations in the complaint, this general incorporation by itself is insufficient to trigger anti-SLAPP protection, without any meaningful showing the challenged cause of action was based on the earlier allegation of protected activity. (See *Kajima, supra*, 95 Cal.App.4th at pp. 931-932.)

## II. *Preliminary Injunction*

McCullough additionally challenges the court's order granting the Association's preliminary injunction motion.

## A. *Background*

The Association moved for a preliminary injunction restraining McCullough from recording any additional documents against Lot E while the lawsuit was pending. In support, the Association argued that McCullough's recent recording of the amended easement required it to file an amended complaint, and argued that an injunction was necessary to preclude the need for additional amendments and/or expanded discovery. McCullough opposed the motion, arguing an injunction was unnecessary because he did not intend to record any additional documents and there was "**absolutely no chance**" the Association would prevail on the merits.

24

The court granted the motion.  In its minute order, the court stated that balancing the harm to each party favors the need for the injunction.  The court found that further recordations could detriment the Association, but would not burden McCullough because he "has already encumbered the property and his interest is protected."

B. *Legal Principles*

A preliminary injunction preserves the status quo pending a determination on the merits of the action.  (*Continental Baking Co. v. Katz* (1968) 68 Cal.2d 512, 528.)  Granting a " 'preliminary injunction does not amount to an adjudication of the ultimate rights in controversy.  It merely determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should . . . be restrained from exercising the right claimed by him.' " (*Ibid.*)

A trial court must weigh two interrelated factors when ruling on a plaintiff's preliminary injunction motion:  (1) the likelihood that the plaintiff will prevail on the merits at trial; and (2) the relative interim harm to the parties from the issuance or nonissuance of the injunction.  (*Butt v. State of California* (1992) 4 Cal.4th 668, 677-678.)  "The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction." (*Id.* at p. 678.)  "A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim." (*Ibid.*)

A court has broad discretion in determining whether to grant a preliminary injunction.  (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69.)  To obtain a

25

reversal, the appellant has the burden to show an abuse of discretion. (*Yu v. University of La Verne* (2011) 196 Cal.App.4th 779, 786-787.)

## C. *Analysis*

McCullough contends the court abused its discretion because he submitted his declaration stating he did not intend to record any further documents, and therefore the injunction was unnecessary. However, the Association presented evidence that it had twice asked McCullough's counsel to stipulate to not recording any additional documents pertaining to Lot E, and counsel never responded to this request. On this record, the court could reasonably conclude the injunction was necessary.

McCullough also contends the lis pendens recorded by the Association adequately protected the Association's interests. However, the court had a reasonable basis to find that enjoining McCullough from further recording would serve a different and independent purpose: to maintain the status quo during the litigation to allow the parties to litigate a defined set of circumstances.

McCullough additionally contends the trial court abused its discretion because it did not reach the issue whether the Association would prevail on the merits at trial. In deciding whether to issue a preliminary injunction, the court must consider whether there is a reasonable probability that the plaintiff will prevail on the merits. If there is no likelihood the plaintiff will prevail, a preliminary injunction is improper. (See *Butt, supra*, 4 Cal.4th at p. 678; *Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 447.)

On reviewing the record, we are satisfied the court did appropriately consider the issue. In its minute order granting the preliminary injunction, the court noted that the relative harm analysis favored the Association, and did not explicitly discuss the likelihood the Association would prevail on the merits. However, the court cited several authorities that make clear the merits must be considered in the preliminary injunction analysis. (See e.g., *Robbins v. Superior Court* (1985) 38 Cal.3d 199, 206; Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2011) ¶ 9:531.) Based on those citations and the well-settled principle that we must presume the court knows and applies the correct law (Evid. Code, § 664), we conclude the court did consider the merits issue and found a likelihood that the Association would prevail on the merits.

To the extent McCullough challenges the sufficiency of the evidence to support this implied conclusion, we reject this challenge. As discussed above, there was substantial evidence in the record showing the interest conveyed to McCullough was not intended to be an exclusive easement, and that the recorded documents could be misleading on this point. Accordingly, there is at least some likelihood that the Association will prevail on its claims for declaratory relief and/or quiet title.[4]

Finally, we note McCullough's assertions in his appellate brief that the injunction has no practical effect. Appellate courts do not reverse a court's rulings unless the ruling was prejudicial, i.e., constituted a miscarriage of justice. (See Cal. Const., art. VI, § 13.)

---

4 In reaching this conclusion, we do not intend to provide any opinion on the ultimate outcome of the lawsuit.

27

If the preliminary injunction had no adverse effect on McCullough because he had no intent to record any additional documents, it cannot be considered prejudicial error.

### III. *Judicial Notice and Augmentation*

McCullough requests that we take judicial notice of the Palm Desert Municipal Code pertaining to the City's sign rules. We deny this request. Because these materials were not presented below, they are not a proper subject for judicial notice. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Moreover, we have examined the submitted City documents, and find nothing in the documents that alters our conclusion that the court properly denied the anti-SLAPP motion. As discussed above, the issue of McCullough's compliance with City sign ordinances was not the basis for the challenged causes of action.

We grant the Association's request that we take judicial notice of certain matters from the superior court file to ensure a complete record. To the extent this motion was untimely, there was no prejudice to McCullough.

DISPOSITION

Orders affirmed.  Appeal dismissed as to Marla McCullough.  Appellant Thomas McCullough to bear respondent's costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

McDONALD, J.

McINTYRE, J.